1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEONEL RODRIGUEZ and MARIA DEL CARMEN SOTO, | 1:08cv0869 DLB |
| | |
| Plaintiff, | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY ADJUDICATION AS TO THE FIRST AND SECOND CAUSES OF ACTION (Document 34) |
| v. | |
| COUNTRYWIDE HOMES, et. al., | ORDER REQUIRING PLAINTIFFS TO FILE DISMISSAL DOCUMENTS AS TO THE THIRD AND FOURTH CAUSES OF ACTION |
| Defendants. | |

17    Defendant Countrywide Home Loans, Inc. ("Countrywide") filed the instant motion for

18  summary judgment, or summary adjudication in the alternative, on September 11, 2009.  The

19  matter was heard on October 30, 2009, before the Honorable Dennis L. Beck, United States

20  Magistrate Judge.  Nafiz Cekrige appeared on behalf of Countrywide.  Kimberly Mayhew

21  appeared for Plaintiffs Leonel Rodriguez and Maria Del Carmen Soto ("Plaintiffs").

22                                              **BACKGROUND**

23        Plaintiffs filed the instant complaint in the Fresno County Superior Court on May 14,

24  2008.  The action was removed to this Court on June 19, 2008.  Plaintiffs named Countrywide,

25  Litton Loan Servicing Inc. ("Litton"), and Mortgage Electronic Registration System, Inc.

26  ("MILA") as Defendants, and allege causes of action for (1) violation of the Real Estate

27  Settlement Procedure Act ("REPSA"), 12 U.S.C. § 2601, et seq.; (2) violation of California Civil

28  Code section 2937; (3) wrongful foreclosure; and (4) violation of California Business and

Profession Code section 17200, et. seq.  The causes of action are based on Plaintiffs' allegation that Countrywide failed to send them a notice of transfer of servicing letter to their mailing address.

Plaintiffs filed a notice of settlement with Defendants Litton and MILA on September 21, 2009, and filed a request for dismissal on November 5, 2009.

Countrywide filed the instant motion for summary judgment/summary adjudication on September 11, 2009.

Plaintiffs filed their opposition on September 22, 2009.  While Plaintiffs addressed the RESPA and California Civil Code section 2937 on the merits, they conceded that the wrongful foreclosure claim and the claim for restitution under section 17200 cannot be maintained against Countrywide.  Plaintiffs indicate that they will move to dismiss these two causes of action.

Countrywide filed its reply on October 23, 2009.

## UNDISPUTED MATERIAL FACTS

In June 2006, Plaintiffs refinanced an existing mortgage and obtained a loan from MILA. Undisputed Material Fact ("UMF") 1.  The loan secures an interest in property located at 16688 2nd Street, Huron, CA, 93234 (the "Property Address").  UMF 2.  Plaintiff Rodriguez was listed as the only borrower and his was the only signature on the Loan Application, dated June 28, 2006.  Plaintiff Soto was not listed as a co-borrower.  UMF 3, 4.  The Loan Application indicated that title would be held jointly in both Rodriguez and Soto's name.  UMF 10.  The Balloon Payment Rider is signed by both Rodriguez and Soto.  UMF 7.  Based on Soto's interest in the property, both Rodriguez and Soto executed the Deed of Trust.  UMF 11.

On the first page of the Loan Application, there is a slot entitled, "Present Address." UMF 12.  That slot contains the Property Address.  UMF 13.  Below that slot, there is a separate space entitled, "Mailing Address, if different from Present Address."  UMF 14.  That space is blank and does not contain Plaintiffs' P.O. Box Address.  UMF 15.  In fact, Plaintiffs' P.O. Box Address does not appear anywhere on the Loan Application.  UMF 16.

Each Truth In Lending Act Disclosure Statement lists the Property Address as both the "Mailing Address" and "Property Address."  The P.O. Box Address does not appear anywhere on

2

these Disclosures.  UMF 19.  Both Rodriguez and Soto also executed a Notice of Right to Cancel under the Truth in Lending Act.  UMF 20.  The Notice lists the Property Address as both the "ADDRESS" and "PROPERTY," and the P.O. Box Address is not listed anywhere on the Notice. UMF 21, 22.

Plaintiffs executed these loan documents knowing that the United States Post Office does not deliver to the Property Address that Plaintiffs listed as their mailing address because the property is in a rural area.  UMF 23.  Soto testified that she has had this P.O. Box for 30 years and she knew to provide other lenders with the P.O. Box Address.  UMF 24, 25.

Although they could not read English, Plaintiffs both testified and demonstrated at their deposition that they were able to identify addresses on the loan documents.  UMF 26.  Soto commented that it was "strange" that the P.O. Box Address was not on her loan documents because Plaintiffs "use[d] the P.O. Box for everything."  UMF 27.

During the time that Countrywide serviced the loan, a borrower could change his mailing address in writing or by telephone by providing certain information.  UMF 29, 30.  In September 2007, after Countrywide service-released the Loan but while Plaintiffs were still sending their payments to Countrywide, the policy to update a mailing address changed slightly.  UMF 31, 32, 33.  Despite these changes, a specific request to change the mailing address was still required. UMF, 34.

In addition, the Deed of Trust and Note also set forth procedures for a borrower to change a mailing address.  Paragraph 15 of the Deed of Trust states that the notice address for all notices given by the lender in connection with the Deed of Trust shall be the Property Address unless the borrower designates a separate address in writing.  UMF 35.  It also states that if a lender has specified a procedure for changing the Property Address as the notice address under the Deed of Trust, a borrower may only change his address through that procedure.  UMF 36. Similarly, Paragraph 7 of the Note states that the notice address under the Note is the Property Address, unless the borrower informs the lender of a change of address by first class mail.  UMF 37.

1    A borrower must expressly request that Countrywide change the mailing address on his or

2    her account.  UMF 38.  Simply putting an address on a money order does not constitute a request

3    for an address change.  UMF 39.  Countrywide accepts payments from people other than the

4    borrower, such as family members.  UMF 40.  The address on a money [order] is not necessarily

5    the borrower's.  UMF 41.[1]

6    Rodriguez testified that he was completely uninvolved with the Loan.  UMF 42.  He had

7    no written or oral communications with Countrywide and he did not ask anyone to call

8    Countrywide on his behalf.  UMF 43.  Neither Soto nor anyone acting on her behalf ever

9    requested that Countrywide change the mailing address on the Loan from the Property Address to

10   the P.O. Box Address.  UMF 44.  Rodriguez never communicated with Litton and Soto never

11   notified Litton that their Mailing Address was different than their Property Address.  UMF 46, 47.

12   On July 26, 2006, Countrywide began servicing the Loan and sent Rodriguez a Welcome

13   Letter at his Property Address.  UMF 48.  The Welcome Letter was returned to Countrywide on

14   August 3, 2006.  UMF 49.  Countrywide serviced the loan for only two months.  UMF 50.  In

15   connection with the transfer of servicing to Litton, Countrywide sent a Good Bye Letter to

16   Plaintiffs at their Property Address on September 8, 2006.  UMF 51.  The Good Bye Letter

17   informed Plaintiffs that effective October 1, 2006, Litton would be serving the Loan.  UMF 52.

18   The Good Bye Letter was returned to Countrywide as undeliverable on September 27, 2006.

19   UMF 53.

20   Per Countrywide internal policies and procedures, once mail is returned, it will examine

21   certain documents to see if an alternate address is available in the files.  The primary document in

22   determining a borrower's mailing address is the loan application, "due to the application having

23   the property address as well as mailing address if different."  UMF 54.  Countrywide will also

24   check a borrower's deed of trust and note for a mailing address.  UMF 55.  In addition,

25   Countrywide will check to see if there is correspondence from the borrower requesting an address

26   change.  UMF 56.

27

28   [1] Plaintiffs state that they cannot admit or deny this fact because it is unintelligible.  Countrywide's
sentence left out the word order, but this omission does not make the statement unintelligible.

4

1   Here, the Loan Application, Deed of Trust and Note only contain the Property Address as

2 the Mailing Address.  UMF 57, 58, 59.  Plaintiffs never requested that Countrywide change their

3 Mailing Address from the Property Address to the P.O. Box.  UMF 60.

4   Soto was expecting to receive coupons or statements from Countrywide and thought it

5 was "strange" that she was not receiving correspondence from Countrywide.  UMF 65.  The

6 Payment Letter that both Plaintiffs signed expressly informed them that their Loan may be service-

7 released and provided a toll free number for them to call.  UMF 66.  Soto demonstrated at her

8 deposition that she could identify telephone numbers on English documents.  UMF 67.  Soto

9 testified that she did not remember why she did not call the toll free number.  UMF 69.  Had she

10 called, she could have spoken to someone in Spanish.  UMF 70.

11   After Countrywide service-released the Loan to Litton, Soto continued making Loan

12 payments to Countrywide.  UMF 71.  Rodriguez, the borrower on the account, did not make any

13 payments.  UMF 72.  [The payments] did not bear the account number or Property Address- the

14 only address associated with the account.  UMF 74, 75.[2]  Only one payment, from September

15 2007 (comprised of two money orders) appears to have had a coupon attached to it.  UMF 76.

16 All of the identifying features on Soto's payments, such as the account number, property address

17 and borrower's name, were placed there by Countrywide employees after they completed their

18 research.  UMF 77.

19   Countrywide received 13 payments associated with the Loan after the service-release.

20 UMF 81.  Purely for customer service reasons, Countrywide had a policy of forwarding service-

21 released payments when it could determine what account they were associated with.  UMF 82.

22 Countrywide forwarded 10 of Soto's payments to Litton.  UMF 84.  Of these 10, Countrywide

23 inadvertently cashed one money order, but forwarded the funds to Litton by check.  UMF 85.

24 Countrywide returned three money orders to a United States Post Office repository because it

25 could not determine that the payments were associated with the Loan.  UMF 86.  The money

26

27   [2] Plaintiffs again state that they cannot admit or deny this statement because it is unintelligible.
Countrywide's original statement read, "They did not bear the account number or Property Address. . ."  It is
28 obvious to the Court that the statement refers to Ms. Soto's money orders.

orders were not returned to the P.O. Box on the money orders because post office boxes are used in many fraudulent schemes.  UMF 88.

## LEGAL STANDARD

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  "If the party moving for summary judgment meets its initial burden of identifying for the court those portions of the material on file that it believes demonstrates the absence of any genuine issues of material fact," the burden of production shifts and "the non moving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'"  T.W. Electric Service, Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (quoting Fed.R.Civ.P. 56(e)).  As to the specific facts offered by the nonmoving party, the court does not weigh conflicting evidence, but draws all inferences in the light most favorable to the nonmoving party.  Id. at 630-31.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Rule 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

1  trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce

2  the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

3  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

4  amendments).

5      In resolving the summary judgment motion, the court examines the pleadings, depositions,

6  answers to interrogatories, and admissions on file, together with the affidavits, if any.  Rule 56 (c).

7  The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all

8  reasonable inferences that may be drawn from the facts placed before the court must be drawn in

9  favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc.,

10  369 U.S. 654, 655 (1962) (per curiam).  Nevertheless, inferences are not drawn out of the air, and

11  it is the opposing party's obligation to produce a factual predicate from which the inference may

12  be drawn.  Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd,

13  810 F.2d 898, 902 (9th Cir. 1987).

14      Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

15  show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

16  as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

17  'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

18                                    **DISCUSSION**

19  A.     First Cause of Action Under RESPA

20         1.     *Requirements Under RESPA*

21      Plaintiffs bring this action under RESPA, 12 U.S.C. section 2605(b)(1), which requires:

22      Each servicer of any federally related mortgage loan shall notify the borrower in
23      writing of any assignment, sale, or transfer of the servicing of the loan to any other
       person.

24      Regulation X, RESPA's implementing regulation, reiterates that "each transferor servicer

25  and transferee servicer of any mortgage servicing loan shall deliver to the borrower a written

26  Notice of Transfer..."  24 C.F.R. § 3500.21(d).

27      Regulation X does not define the term "deliver," though the parties agree that delivery

28  includes delivery by mail.  In that regard, Regulation X defines "mailing" as follows:

The provisions of this part requiring or permitting mailing of documents shall be deemed to be satisfied by placing the document in the mail (whether or not received by the addressee) addressed to the addresses stated in the loan application or in other information submitted to or obtained by the lender at the time of loan application or submitted or obtained by the lender or settlement agent, except that a revised address shall be used where the lender or settlement agent has been expressly informed in writing of a change in address.

24 C.F.R. § 3500.11.

2.    *Analysis*

Countrywide argues that summary judgment is proper because there is no dispute that (1) Plaintiffs provided only the Property Address on their Loan Application, (2) Plaintiffs did not inform Countrywide of a change in address; (3) the other documents signed at settlement (Note, Deed of Trust and Truth in Lending Act Disclosures) indicated that the Property Address was their Mailing Address; and (4) Countrywide sent the Good Bye Letter to the Property Address.

The Court's decision turns on the interpretation of the requirements under RESPA.  For the reasons discussed below, the Court declines to adopt Plaintiffs' interpretation of RESPA's requirements and finds that summary judgment is appropriate on the RESPA claim, and thus, the California Civil Code section 2937(a) claim.  To find otherwise would be to impose a duty on lenders not required by RESPA.

Countrywide submits, and the Court agrees, that RESPA requires a lender to send a Good Bye letter to the Mailing Address listed by the borrower in the loan documents.  When the borrower submits an express change of mailing address, the lender is required to send the Good Bye letter to the new address.

It is undisputed here that Countrywide mailed the Good Bye Letter to the Mailing Address listed in the loan application and all other documents signed at settlement.  In each of these documents, the Mailing Address was listed as the Property Address.  At no time did Plaintiffs expressly notify Countrywide of a change in their Mailing Address.  24 C.F.R. § 3500.11.

Plaintiffs suggest that RESPA "does not prohibit the use of a revised address under other circumstances, such as where the lender has been informed orally of a change of address, or has not been expressly informed, i.e., has notice of a revised address by other means."  This reading,

8

though unavailing, is Plaintiffs' attempt to introduce an agency argument and impose additional duties on Countrywide, as discussed below.

Plaintiffs first attempt to defeat summary judgment by asserting, for the first time, an agency argument that would have the Court impute knowledge of the loan broker to Countrywide.  Plaintiffs' agency argument fails for a number of reasons, the most obvious of which is a basic procedural tenet.  The issues on summary judgment are framed by the complaint. Indeed, the issues in the complaint guide the parties during discovery and put the defendant on notice of what evidence is necessary to defend against the allegations.  For these reasons, a plaintiff cannot oppose summary judgment based on a new theory of liability because it would essentially blind side the defendant with a new legal issue after the bulk of discovery has likely been completed.  See eg. Coleman v. Quaker Oats Co., 232 F.3d 1271, 1292-1293 (9th Cir. 2000) (where plaintiff did not include legal theory in complaint and did not identify the theory at any time prior to summary judgment, she could not rely on the theory for the first time during summary judgment).

Plaintiffs' complaint does not assert an agency theory, nor does it include *any* of the facts Plaintiffs rely on to support this theory.  There is no indication that Plaintiffs relied on this agency theory during discovery or communicated the theory to Countrywide in any way.  Accordingly, Plaintiffs' agency argument is not properly before the Court.  See Klein v. Boeing Co., 847 F.Supp. 838, 844 (W.D.Wash.1994) ("Klein never asserted this claim prior to his opposition to Boeing's motion for summary judgment, nor has he moved to amend his complaint to add such a claim. Thus, this claim is not properly before the court.")

Even if this Court could consider Plaintiffs' argument, it is baseless.  Plaintiffs suggest that they informed their loan broker, who completed the Loan Application in English while Ms. Soto spoke to him in Spanish, that their Mailing Address was the P.O. Box.  Without supporting evidence, Plaintiffs argue that whether an agency relationship existed between the original lender, MILA, and the subsequent servicer, Countrywide, is a matter of fact and cannot be decided on summary judgment.  Plaintiffs suggest no legal basis for imputing Ms. Soto's alleged verbal communication to Countrywide.  Such conclusory arguments do not defeat summary judgment.

Plaintiffs' second argument in opposition to summary judgment seeks to impose a duty on lenders to use "reasonable care and diligence in determining the borrower's correct address." Plaintiffs rely wholly on Wanger v. EMC Mortgage Corp., 103 Cal. App. 4th 1125 (2002), where a plaintiff, who had provided her lender with a letter containing a new mailing address, brought an action against the lender after it foreclosed on her property.  Although Plaintiff's letter was dated before the date of transfer of service, the lender sent the transfer letter to the old address.  In discussing the requirements under RESPA, the Fifth District Court of Appeal held that "a servicer must exercise reasonable care and diligence in determining the correct address of the borrower when mailing a notice of transfer."  Wanger, 103 Cal.App. 4th at 1135.

The Wanger case, however, was decided under very different circumstances.  There, the plaintiff had notified the lender of her change of address, and a question as to the actual and/or constructive knowledge of the lender arose.  The Court's discussion of duty therefore arose in a context where there was reason to believe that the lender *should have known* of the plaintiff's address change because of her letter.

In contrast, Plaintiffs do not dispute that they did not expressly advise Countrywide of a new Mailing Address.  Under these facts, then, there is no reason to charge Countrywide with any knowledge, constructive or otherwise, that Plaintiffs' P.O. Box was their Mailing Address.

In this regard, Plaintiffs' attempt to rely on the address on Ms. Soto's money orders or other documents in their file that may have included the P.O. Box, fails.  Such documents include their driver's licenses and letters unrelated to the Loan Application.  Plaintiffs use Wanger to argue that Countrywide should have used reasonable  diligence to search for Plaintiffs' last known address because they were on notice that the Property Address was an undeliverable address after the Welcome Letter was returned.  To impose such a duty here, however, ignores the straightforward language of Regulation X and would require the lender to undertake a detailed investigation where the borrowers failed to abide by their responsibilities to (1) ensure that the documents they signed under penalty of perjury were accurate; and (2) abide by the lender's policies.  Neither the specific language of RESPA nor any reasonable interpretation requires such a result.

10

Insofar as Plaintiffs argue that Countrywide failed to follow their internal policies and procedures, their argument does not change the result.  Countrywide' internal policies are distinct from the RESPA requirements and are irrelevant to the RESPA analysis.

B.       California Civil Code Section 2937

        1.       *Requirements*

        Similarly, California Civil Code section 2937(b) also requires a transferor of service to provide "written notice to the borrower or subsequent obligor before the borrower or subsequent obligor becomes obligated to make payments to a new servicing agent."  Section 2937(e) states that this notice "shall be sent by first- class mail, postage prepaid, to the borrower's or subsequent obligor's address designated for loan payment billings, or if escrow is pending, as provided in the escrow..."

        2.       *Discussion*

        For the reasons discussed above, Plaintiffs' section 2937 claim cannot survive summary judgment.

## ORDER

        Countrywide's motion for summary adjudication is GRANTED as to the first and second causes of action.  Plaintiffs have indicated that they will be moving to dismiss the third and fourth causes of action, and SHALL file appropriate dismissal documents within ten (10) days of the date of service of this order.


 IT IS SO ORDERED.

**Dated:    November 10, 2009**                    _____ **/s/ Dennis L. Beck**_____
                                        UNITED STATES MAGISTRATE JUDGE